IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JUSTIN M. CORLISS,                    :
                    Petitioner,       :
                                      :        1:18-cv-2192
        v.                            :
                                      :        Hon. John E. Jones III
THOMAS MCGINLEY, WARDEN,   :
SCI COAL TOWNSHIP,                :
                    Respondent.       :

## MEMORANDUM

### August 17, 2020

Petitioner Justin M. Corliss ("Petitioner" or "Corliss") filed the instant

petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1),

accompanied by a supporting brief (Doc. 2), seeking relief from his judgment of

sentences entered in Monroe County Court of Common Pleas, Pennsylvania,

criminal cases 1749-CR-2013 for involuntary deviate sexual intercourse, incest,

attempted involuntary deviate sexual intercourse, corruption of minors, indecent

assault, endangering welfare of minors, indecent exposure, and 2173-CR-2013 for

aggravated indecent assault.  (Doc. 1, pp. 1, 2).

The petition is ripe for disposition.  For the reasons set forth below, the

Court will deny the petition.

## I.    FEDERAL COURT PROCEDURAL BACKGROUND

Upon initiation of the proceedings, an Order issued notifying Corliss of the

limitations upon his right to file another habeas petition in the future if his petition is considered by the Court.  (Doc. 8).  Specifically, the Order notified him of the following:

> Under 28 U.S.C. § 2244(b)(3)(A), no second or successive habeas petition under section 2254 is allowed unless there are exceptional circumstances and the petitioner has obtained permission from the appropriate court of appeals. *See United States v. Miller*, 197 F.3d 644, 649 (3d Cir. 1999); *Mason v. Meyers*, 208 F.3d 414, 417 (3d Cir. 2000) (applying *Miller* requirements to section 2254 habeas petitions as well as to section 2255 petitions).  This means that if your current 2254 habeas petition is considered on the merits and rejected, you no longer have the right simply to file another 2254 petition in this Court raising other grounds for relief, even if you are attempting to raise grounds that you did not think of before filing the current petition.  Instead, you would have to move in the Court of Appeals for a certificate allowing you to file that second 2254 petition.  Further, the grounds upon which you could rely to obtain that certificate, and proceed with a subsequent 2254 petition, are limited to two extremely rare circumstances: (1) "the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable", or (2) "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence" and "the facts underlying the claim ... would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."  28 U.S.C. § 2244(b)(2).

(*Id.*).  The Order afforded him the opportunity to have the petition ruled on as filed or withdraw the petition and file one all-inclusive petition.  (*Id.* at 3).  On January 18, 2019, Corliss elected to have the petition ruled on as filed.  (Doc. 13).

The Court ordered the petition served and Respondent responded.  (Doc.

21).  Corliss filed a Traverse.  (Doc. 22).  Since then, he has filed a multitude of exhibits, supplements, updates and amendments.  (Docs. 19, 20, 29-31, 33, 41, 43).

A recent review of the Corliss' state court electronic dockets revealed that he initiated Post Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. §§ 9541-46, proceedings in both criminal matters.  https://ujsportal.pacourts.us.  This prompted the Court to stay the matter in accordance with the stay and abeyance rule announced in *Crews v. Horn*, 360 F.3d 146, 151 (3d Cir. 2004) (finding that "[s]taying a habeas petition pending exhaustion of state remedies is a permissible and effective way to avoid barring from federal court a petitioner who timely files a mixed petition") and administratively close the case.  Corliss immediately moved to vacate the Order, indicating that he desired to proceed with the petition as filed.  (Doc. 38).  The Court again notified him of the limitations on his right to file another habeas petition in the future.  (Doc. 39).  He chose to forego the benefit of the stay, indicated that he understood that he loses his ability to file a second or successive petition absent certification by the United States Court of Appeals for the Third Circuit and that his potential for relief is further limited in a second or successive petition.  (Docs. 40, 42).  On July 14, 2020, we lifted the stay, reopened the case, and indicated that a decision in the matter would be forthcoming.  (Doc. 42).

## II.   STATE COURT FACTUAL AND PROCEDURAL BACKGROUND

In its Memorandum addressing Corliss' direct appeal of the convictions

obtained in 1749-CR-2013 and 2173-CR-2013, the Superior Court of Pennsylvania

("Superior Court") set forth the following factual and procedural histories:[1]

> [Appellant] operated a pet store in Monroe County. In 1993, [appellant] commenced a romantic relationship with his coworker, K.V. Shortly thereafter, [appellant] moved in the residence K.V. shared with her minor daughter, R.V. In 1995, when R.V. was approximately nine years old, [appellant] began to molest R.V. At first, [appellant] would tickle R.V. when they played together. [Appellant's] behavior escalated, however, and he began placing his hands down R.V.'s pants. [Appellant] digitally penetrated R.V. on multiple occasions between 1995 and 1997. The abuse occurred at K.V.'s residence, often while K.V. was in another room. On one occasion, [appellant] inappropriately touched R.V. during a car trip to New York. The molestation continued until 1997, when [appellant] moved out of K.V.'s residence. R.V. did not immediately report the abuse.

> In 1996, fourteen-year old [D.B.[1]] began to work at [appellant's] pet store. [footnote 1:  At the time of appellant's 1998 trial, D.B. was known as D.G. For the purposes of continuity, we will refer to her as D.B. throughout this memorandum.].  [D.B.]'s father was a regular customer at the pet store, and [appellant] had known [D.B.] since she was eleven years old. After [D.B.] started working at the pet store, [appellant] would tickle her. [Appellant's] behavior escalated, and he began placing his hands down [D.B.]'s pants. Eventually, [appellant] and [D.B.] engaged in sexual intercourse. [Appellant] also performed oral sex on [D.B.] on multiple occasions.

> The abuse occurred at the pet store during regular business hours. On two occasions, [D.B.]'s twelve-year-old friend witnessed the sexual activity. [Appellant] also fondled [D.B.] during car trips to New York.

---

[1] In reciting the factual history, the Superior Court quoted a previous appellate panel.  In setting forth the procedural history, the court relied on the trial court's depiction of events.

[D.B.] testified that [appellant] took her on these trips "almost every single Monday" to pick up supplies for the pet store. In addition to the liaisons at work, [appellant] molested [D.B.] at K.V.'s residence at least once. In 1997, [D.B.]'s mother learned about the abuse and immediately informed the police.

At No. 743 of 1997, the Commonwealth charged [appellant] with multiple offenses related to the molestation of [D.B.] Following a trial in 1998, a jury convicted [appellant] of two (2) counts of statutory sexual assault and one (1) count each of aggravated indecent assault, indecent assault, and corruption of minors. On August 20, 1998, the [trial] court sentenced [appellant] to an aggregate term of four (4) to ten (10) years' imprisonment. This Court affirmed the judgment of sentence on November 30, 1999. *See Commonwealth v. Corliss*, 750 A.2d 366 (Pa.Super. 1999) (unpublished memorandum).

Prior to the start of the 1998 trial, [appellant] met C.T. at the pet store. [Appellant] and C.T. married, and C.T. became pregnant before [appellant's] sentencing hearing. C.T. gave birth to [appellant's] daughter, C.C., in 1999 while [appellant] was incarcerated. [Appellant] remained incarcerated until 2008. Upon his release, [appellant] returned to live with C.T. and C.C. C.T. had no concerns about [appellant] being around C.C., because [appellant] had convinced C.T. that he was actually innocent of the charges pertaining to [D.B.]

When [appellant] would play with C.C., C.T. noticed that [appellant] tickled the child and scratched the child's back. The tickling started to bother C.C., and she asked [appellant] not to touch her, but C.T. did not intervene. [Appellant's] relationship with C.T. ended in 2010, after C.T. discovered that [appellant] was having an affair with another teenager. In 2013, C.C. informed C.T. that [appellant] had molested her. C.C. claimed that [appellant] would put his hands down her pants and touch her vagina, exposed his penis to C.C., and attempted to force the child to perform oral sex on him.

Police arrested [appellant] for the offenses against C.C. in July 2013. The media reported on [appellant's] arrest, and R.V. saw the coverage. R.V. decided to contact police and inform them of the abuse she

suffered from 1995 until 1997. At No. 1749 of 2013, the Commonwealth charged [appellant] with sex offenses committed against C.C. At No. 2173 of 2013, the Commonwealth charged [appellant] with sex offenses committed against R.V. [Footnote 1] On September 24, 2013, the Commonwealth informed [appellant] that Nos. 1749 and 2173 of 2013 would be joined for trial. [Appellant] filed counseled pretrial motions on October 3, 2013, including a motion to sever the cases. Ultimately, the [trial] court granted [appellant's] motion to sever the cases for trial.

> [Footnote 1:] At No. 1748 of 2013, the Commonwealth also charged [appellant] with offenses related to his failure to register with state police pursuant to Megan's Law. The matters of No. 1748 of 2013 are not at issue in this appeal.

*Commonwealth v. Corliss*, No. 2091 EDA 2014, unpublished memorandum (Pa. Super. filed July 14, 2015).

The trial court provided the following procedural history:

[Appellant] was convicted by a jury on June 1, 2016 of various offenses following a trial in which these two (2) cases were consolidated. In case # 1749 CR 2013, [appellant] was convicted of Count 1, Involuntary Deviate Sexual Intercourse With a Child; Count 2, Criminal Attempt Involuntary Deviate Sexual Intercourse With a Child; Count 3, Indecent Assault; Count 4, Indecent Exposure; Count 5, Incest; Count 6, Endangering the Welfare of a Child; and, Count 7, Corruption of a Minor. [Footnote 2: 18 Pa.C.S.A. §§ 3123(b), 901, 3126, 3127, 4302, 4304, 6301, and 3125, respectively.]. [Appellant] was convicted in case # 2173 CR 2013 of Count 1, Aggravated Indecent Assault; [Footnote 3: 18 Pa.C.S.A. § 3125.] and Count 2, Aggravated Indecent Assault....

[Appellant] was deemed a sexually violent predator ("SVP") on September 29, 2016 following a hearing, which subjects him to mandatory lifetime sexual offender registration requirements. [Appellant] was then sentenced on October 7, 2016 in case # 1749 CR 2013 to a total confinement of 360 months (30 years) minimum to 720

months (60 years) maximum. [Appellant] was sentenced on October 7, 2016 in case # 2173 CR 2013 to a total confinement of 108 months (9 years) minimum to 216 months (18 years) maximum. The sentence in case # 2173 was run consecutive to case # 1749 for a total period of incarceration of 468 months (39 years) to 936 months (78 years). [Appellant] has filed timely post-sentence motions.

[Appellant] was initially represented in these matters by private counsel, Robert Saurman, Esquire, who filed omnibus pre-trial motions on behalf of [appellant. Appellant] then fired his legal counsel and proceeded *pro se* following a hearing in which a colloquy was given to [appellant] concerning his right to counsel, a listing of the offenses and maximum penalties if convicted, and that [appellant] was making a voluntary waiver of counsel. The Court also appointed stand-by counsel for [appellant. Appellant] then represented himself *pro se* in filing various motions and appeals to Orders. The matter was set for trial and [appellant] then retained private counsel prior to the start of trial.

[Appellant] terminated the services of his trial counsel soon after the trial, and again proceeded to represent himself following a hearing on his motion to proceed *pro se*. [Appellant] was given another colloquy on his *pro se* representation at that time. [Appellant] represented himself at sentencing held on October 7, 2016. Following sentencing, [appellant] filed post-sentence motions *pro se*. He then retained counsel to represent him on the post-sentence issues and counsel was afforded additional time to file any additional post-sentence motions. Counsel timely filed additional post-sentence motions. [Appellant] then filed a motion to proceed *pro se* once again, and his counsel also filed a motion to withdraw. Following a hearing held on November 23, 2016, and a colloquy placed on the record, [appellant] was allowed to proceed *pro se* on his post-sentence motions.

Trial court opinion, 12/15/16 at 1–3.

The trial court granted appellant's post-sentence motions in part and denied appellant's post-sentence motions in part. Specifically, appellant's motion to reconsider his sentence for endangering the welfare of a child was granted, and his sentence was reduced from 2–4

years' incarceration to be served concurrently with his other sentences to 1–2 years' incarceration to be served concurrently with his other sentences. (Notes of testimony, 10/7/16 at 84; trial court order, 12/15/16).

Appellant filed a notice of appeal on January 3, 2017. The trial court ordered appellant to produce a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) on January 4, 2017. Appellant timely complied with the trial court's order on January 20, 2017. On January 23, 2017, the trial court issued an opinion pursuant to Pa.R.A.P 1925(a).

Appellant raises the following issues for our review:

1. Whether a judgment of acquittal or an arrest of judgment must issue as to six crimes convicted of when the jury did not render a decision as to the challenged element of negating the statute of limitations.

2. Whether the testimony of complainant C.C. was sufficient to meet the elements of involuntary deviate sexual intercourse and incest.

3. Whether testimony of intercourse, that conflicts with incontrovertible DNA evidence, and other false testimony suborned by ADA Rakaczewski from bad acts witness [D.B.], violates the 5th, 6th, and 14th Amendments to the U.S. Constitution requiring the conviction to be vacated.

4. Whether the trial court's representation of the exculpatory DNA evidence is violative (sic) of the right to due process of law. [Footnote 4:  Issue 4 is identified by appellant as a "subquestion" under his third issue.].

5. Whether Rakaczewski's deliberate omission of exculpatory evidence and known credibility challenges, as to complainant C.C., violated [appellant's] right to due process of law, as guaranteed through the U.S. Constitution, warranting that the conviction and sentence be vacated. Appellant's brief at 4.

*Commonwealth v. Corliss*, No. 108 EDA 2017, 2017 WL 6196304, at *1–3 (Pa.

Super. Ct. Dec. 8, 2017).  The Superior Court affirmed Corliss' judgment of

sentence on December 8, 2017.  (*Id.*).  Thereafter, on February 14, 2018, the court

denied reargument.  *Com. v. Corliss*, 181 A.3d 1212 (Pa. Super. Ct. 2017), for text,

*see Commonwealth v. Corliss*, No. 108 EDA 2017, 2017 WL 6196304 (Pa. Super.

Ct. Dec. 8, 2017).  The Supreme Court of Pennsylvania denied the petition for

allowance of appeal on October 30, 2018.  *Commonwealth v. Corliss*, 196 A.3d

616 (Pa. 2018).

On November 13, 2018, he filed the instant petition.

## III.   ISSUES PRESENTED FOR FEDERAL REVIEW

Corliss seeks federal review of the following issues:

"Ground #1:  Petitioner was charged with crimes that are time-barred; thereby, the Commonwealth failed to establish prima facie cases and the courts lacked subject matter jurisdiction to proceed on them as doing so violates due process of law and implicates the ex post facto clause."  (Doc. 2, p. 23).

"Ground #2:  The convictions for any of the six time-barred charges were unconstitutionally obtained as the court relieved the Commonwealth of the burden to prove the essential element of crime of negating limitations."  (*Id.* at 39).

"Ground #3:  Petitioner was charged with crimes that possess an element of 'sexual intercourse' though no evidence exists to support same;  thereby, the Commonwealth failed to establish a prima facie case as to any of these charges and the court lacked jurisdiction to proceed on them."  (*Id.* at 54).

9

"Ground #4:  The conviction for any of the three charges having an element of 'sexual intercourse' were unconstitutionally obtained as no evidence was adduced to support such."  (*Id.* at 62).

"Ground #5:  It was constitutional error for the trial court to change the evidence required to meet 'sexual intercourse,' upon instructing the jury, to elements Petitioner was not on notice to defend against, resulting in an impermissible variance."  (*Id.* at 67).

"Ground #6:   Prosecutor Rakaczewski engaged in the criminal subornation of perjury from [D.B.]"  (*Id.* at 89).

"Ground #7:  Rakaczewski refused to put into evidence emails and other known evidence that challenged C.C's credibility and proves that no untoward conduct occurred."  (*Id.* at 112).

"Ground #8:  Rakaczewski refused to correct [D.B.'s] stated claim that the DNA evidence from 1998 was 'inconclusive.' "  (*Id.* at 131).

"Ground #9:   Petitioner was subjected to a mandatory minimum sentence that was based on the false conviction from 1998 involving [D.B.], the DNA evidence, and is unconstitutional as a matter of law." (*Id.* at 152).

## IV.   <u>DISCUSSION</u>

### A.   **Standard of Review**

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper

mechanism for a prisoner in custody pursuant to the judgment of a state court to

challenge the "fact or duration" of his confinement.  *Preiser v. Rodriguez*, 411 U.S.

475, 498-99 (1973).  28 U.S.C. § 2254, provides, in pertinent part:

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district

court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

(b)(1) an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –

    (A)   the applicant has exhausted the remedies available in the courts of the State;

        ...

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

    (1) resulted in a decision that was contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254.

Section 2254 clearly sets limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner. *Cullen v. Pinholster*, 536 U.S. 170, 181 (2011); *Glenn v. Wynder*, 743 F.3d 402, 406 (3d Cir. 2014). A federal court may consider such a petition only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

28 U.S.C. § 2254(a).  By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States," § 2254 places a high threshold on the courts.

Further, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21, 96 S.Ct. 175, 177, 46 L.Ed.2d 162 (1975) (*per curiam*)."  *Estelle v. McGuire, 502 U.S. 62*, at 67–68 (1991).  A federal habeas court may not consider a petitioner's claims of state law violations; review is limited to issues of federal law. *See Estelle*, 502 U.S. at 67-68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law."); *Engle v. Isaac*, 456 U.S. 107, 120 n.19 (1982) ("If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable.").

## B.   Non-Cognizable Claims

### 1.   Grounds 1and 2

Corliss challenges his convictions in 1749-CR-2013 and 2173-CR-2013 on

timeliness grounds.[2]  He specifically takes issue with the state courts' conclusions

that, in accordance with Pennsylvania law, the statute of limitations defense posed

a question of law for the judge as opposed to a question of fact to be submitted to

the jury.  The state noted that " '[w]here the date of discovery of criminal acts is

unrebutted, the issue of whether the statute of limitations for prosecution has run is

a question of law for the trial judge.' *Corban Corp.*, 909 A.2d at 410, citing

*Commonwealth v. Hoffman*, 398 A.2d 658, 661 (Pa.Super. 1979)." *Commonwealth*

*v. Corliss*, No. 108 EDA 2017, 2017 WL 6196304, at *4 (Pa. Super. Ct. Dec. 8,

2017).  "In Pennsylvania, the statute of limitations is not a constitutional right but,

instead, is an act of legislative grace, whereby the government surrenders its ability

to prosecute an individual after the passage of a stated period of time. *See*

*Commonwealth v. Johnson*, 520 Pa. 165, 170, 553 A.2d 897, 900 (1989); *see also*

*Commonwealth v. Wilcox*, 56 Pa.Super. 244, 250 (1914)." *Com. v. Russell*, 2007

PA Super 376, 938 A.2d 1082, 1087 (2007).  Corliss' challenges to the timeliness

of the prosecutions on state law grounds are not cognizable in a federal habeas

corpus proceeding.  To the extent that this claim implicates federal rights, it is

---

[2]   "In considering a § 2254 petition, we review the 'last reasoned decision' of the state courts on the petitioner's claims." *Simmons v. Beard*, 590 F.3d 223, 231–32 (3d Cir. 2009) (citing *Bond v. Beard*, 539 F.3d 256, 289–90 (3d Cir. 2008) ).  The trial court issued multiple consistent decision on the statute of limitations in 1749 CR 2013 and 2173 CR 2013.  On appeal, the Superior Court only addressed 1749 CR 2013.  Hence, we rely on both the trial court and appeals courts' determinations in analyzing the statute of limitations claims.

addressed in the merits section below.

      2.    <u>Grounds 3, 4, and 5</u>

In challenging the IDSI convictions, Corliss argues that the state court ignored various definitions outside the IDSI statute in upholding the convictions. He invites the Court to engage in statutory construction and delve into the intent of the Pennsylvania General Assembly.  (Doc. 2, pp. 56, 57, 60, 63, 64, 69, 71, 72, 79).  We will not consider these arguments as they are based on state law grounds. However, the federal claim of whether there existed sufficient evidence to support the IDSI convictions is addressed in the merits section *infra*.

### C.    **Exhaustion and Procedural Default**

Absent unusual circumstances, a federal court should not entertain a petition for writ of habeas corpus, unless the petitioner has first satisfied the exhaustion requirement articulated in 28 U.S.C. § 2254(b).  The exhaustion requirement is grounded on principles of comity to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions.  *See Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971).  The habeas statute codifies this principle by requiring that a petitioner exhaust available remedies in state court, meaning a state prisoner must "fairly present" his claims in "one complete round of the state's established

appellate review process," before bringing them in federal court.  *See* 28 U.S.C. §

2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (stating

"[b]ecause the exhaustion doctrine is designed to give the state courts a full and

fair opportunity to resolve federal constitutional claims before those claims are

presented to the federal courts, . . .  state prisoners must give the state courts one

full opportunity to resolve any constitutional issues by invoking one complete

round of the State's established review process."); *see also Duncan v. Henry*, 513

U.S. 364, 365 (1995); *Picard*, 404 U.S. at 275 (1971); *Lambert v. Blackwell*, 134

F.3d 506, 513 (3d Cir. 1997).  This requires that the claim brought in federal court

be the substantial equivalent of that presented to the state courts. *Picard*, 404 U.S.

at 278; *see also McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999) (holding

that petitioner must present both "factual and legal substance" of claim to state

courts).  Mere reliance of state and federal claims on the same constitutional

provision does not render the two claims substantially equivalent. *See Brown v.

Cuyler*, 669 F.2d 155 (3d Cir. 1982); *Zicarelli v. Gray*, 543 F.2d 466 (3d Cir.

1976).  Both the legal theory and the facts on which a federal claim rests must have

been presented to the state courts. *See Picard*, 404 U.S. at 277; *Brown*, 669 F.2d at

158–61.

Additionally, a federal habeas court "will not review a question of federal

law decided by a state court if the decision of that court rests on a state law ground

that is independent of the federal question and adequate to support the judgment.

*See, e.g., Fox Film Corp. v. Muller*, 296 U.S. 207, 210, 56 S.Ct. 183, 184, 80 L.Ed.

158 (1935); *Klinger v. Missouri*, 13 Wall. 257, 263, 20 L.Ed. 635 (1872). This rule

applies whether the state law ground is substantive or procedural. *See, e.g., Fox*

*Film, supra; Herndon v. Georgia*, 295 U.S. 441, 55 S.Ct. 794, 79 L.Ed. 1530

(1935)." *Coleman*, 501 U.S. at 729, holding modified by *Martinez v. Ryan*, 566

U.S. 1 (2012).  The requirements of "independence" and "adequacy" are distinct.

*Johnson v. Pinchak*, 392 F.3d 551, 557-59 (3d Cir. 2004).  State procedural

grounds are not independent, and will not bar federal habeas relief, if the state law

ground is so "interwoven with federal law" that it cannot be said to be independent

of the merits of a petitioner's federal claims. *Coleman*, 501 U.S. at 739-40. A state

rule is "adequate" for procedural default purposes if it is "firmly established and

regularly followed." *Johnson v. Lee*, —— U.S. ——, 136 S. Ct. 1802, 1804, 195

L.Ed.2d 92 (2016) (per curiam) (citation omitted).  These requirements ensure that

"federal review is not barred unless a habeas petitioner had fair notice of the need

to follow the state procedural rule," and that "review is foreclosed by what may

honestly be called 'rules' ... of general applicability[,] rather than by whim or

prejudice against a claim or claimant." *Bronshtein v. Horn*, 404 F.3d 700, 707-08

(3d Cir. 2005). "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." *Edwards v. Carpenter*, 529 U.S. 446, 452-53 (2000).

The failure to properly present claims to the state court generally results in a procedural default. *Lines v. Larkin*, 208 F.3d 153, 150-60 (3d Cir. 2000). "When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.' 28 U.S.C. § 2254(b). In such cases, however, applicants are considered to have procedurally defaulted their claims and federal courts may not consider the merits of such claims unless the applicant establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse his or her default. *See Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)." *McCandless*, 172 F.3d at 260.

To demonstrate "cause" for a procedural default, a petitioner must point to some objective external factor which impeded his efforts to comply with the state's

procedural rule.  *See Murray v. Carrier*, 477 U.S. 478, 488 (1986).  "Prejudice" will be satisfied only if he can demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law.  *See Lockhart v. Fretwell*, 506 U.S. 364, 366 (1993).

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray*, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice.  *Edwards*, 529 U.S. at 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001).  The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency.  *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496.  A petitioner establishes actual innocence by asserting "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

1.     <u>Ground 8</u>

In his eighth ground, Corliss argues that he is entitled to relief because the

prosecutor refused to correct DB's claim that the DNA evidence from 1998 was inconclusive. (Doc. 2, p. 131).  He relies on a March 2017 DNA report which purports to exclude him as the donor of any DNA material found on DB's clothes. (*Id.* at 136-151).

Corliss raised the issue on appeal.  The Superior Court did not consider the claim stating as follows:

> The [March 1, 2017 DNA] report is not found within the record that was certified by the trial court.
>
> > The fundamental tool for appellate review is the official record of the events that occurred in the trial court. *Commonwealth v. Williams*, 715 A.2d 1101, 1103 (Pa. 1998). To ensure that an appellate court has the necessary records, the Pennsylvania Rules of Appellate Procedure provide for the transmission of a certified record from the trial court to the appellate court. *Id.* The law of Pennsylvania is well settled that matters which are not of record cannot be considered on appeal. *Commonwealth v. Bracalielly*, 658 A.2d 755, 763 (Pa. 1995); *Commonwealth v. Baker*, 614 A.2d 663, ,672 (Pa. 1992); *Commonwealth v. Quinlan*, 412 A.2d 494, 496 (Pa. 1980); *Commonwealth v. Young*, 317 A.2d 258 (Pa. 1974). Thus, an appellate court is limited to considering only the materials in the certified record when resolving an issue. *Commonwealth v. Walker*, 878 A.2d 887, 888 (Pa. Super. 2005). In this regard, our law is the same in both the civil and criminal context because, under the Pennsylvania Rules of Appellate Procedure, any document which is not part of the officially certified record is deemed non-existent—a deficiency which cannot be remedied merely by including copies of the missing documents in a brief or in the reproduced record. *Commonwealth v. Kennedy*, 868 A.2d 582, 593 (Pa.Super. 2005); *Lundy v. Manchel*, 865 A.2d 850, 855 (Pa.Super. 2004). The emphasis on the certified record is necessary because, unless the trial court

> certifies a document as part of the official record, the appellate
> judiciary has no way of knowing whether that piece of evidence
> was duly presented to the trial court or whether it was produced
> for the first time on appeal and improperly inserted into the
> reproduced record. Simply put, if a document is not in the certified
> record, the Superior Court may not consider it. *Walker*, 878 A.2d
> at 888.
>
> *Commonwealth v. Preston*, 904 A.2d 1, 6–7 (Pa.Super. 2006), appeal
> denied, 916 A.2d 632 (Pa. 2007).
>
> Because the March 1, 2017 report is not part of the certified record, we
> cannot consider the contents of the report when deciding appellant's
> third issue.

*Commonwealth v. Corliss*, 2017 WL 6196304, at *7–8.  The applicable procedural

rule firmly states that the state court may not consider anything that is not part of

the certified record: "Any document which is not part of the official certified

record is considered to be non-existent, which deficiency may not be remedied by

inclusion in the reproduced record[,]" and "[w]here a review of an appellant's

claim may not be made because of such a defect in the record, we may find the

issue waived." *Eichman v. McKeon*, 824 A.2d 305, 316 (Pa.Super.2003) (citing

PA.R.A.P. 1921).  Rule 1921 states that "[t]he original papers and exhibits filed in

the lower court, paper copies of legal papers filed with the prothonotary by means

of electronic filing, the transcript of proceedings, if any, and a certified copy of the

docket entries prepared by the clerk of the lower court shall constitute the record

on appeal in all cases."  PA.R.A.P., Rule 1921.

"A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. *See, e.g., Walker v. Martin*, 562 U.S. ——, ——, 131 S.Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); *Beard v. Kindler*, 558 U.S. ——, ——, 130 S.Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. *See Coleman*, 501 U.S., at 750, 111 S.Ct. 2546." *Martinez v. Ryan*, 566 U.S. 1, 9–10 (2012).

There is no dispute that Pennsylvania's procedural bar applicable to reliance on, or inclusion of, a document which is not part of the officially certified record on appeal is a firmly established independent and adequate state law ground. Thus, we can hear this claim only if Corliss can establish cause to excuse the procedural default and prejudice from a violation of federal law. He fails to identify some objective external factor which prevented him from complying with the state's procedural rules in presenting this claim and he does not demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law. Nor is there any argument or indication that a

"constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray*, 477 U.S. at 496.  Federal review of the claim is therefore barred.

### 2.   Ground 9

In Ground 9, Corliss contends that he "was subjected to a mandatory minimum sentence that was based on a false conviction from 1998 involving [D.B.], the DNA evidence, and is unconstitutional as a matter of law."  (Doc. 2, pp. 152-159).  This issue is included in the "Sentencing" section of his Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b).  (Doc. 21-20, p. 5).  In its Pa.R.A.P. 1925(a) opinion, the trial court referenced its prior opinion addressing post-sentence motions, which included a discussion of the mandatory minimum sentence.  (Doc. 21-17, pp. 28, 29; Doc. 21-21).  However, Corliss failed to pursue the matter in the Superior Court.  His brief is devoid of any mention of the mandatory minimum sentence issue.  (Doc. 21-22, p. 3).  Consequently, the claim is procedurally defaulted.

He fails to identify some objective external factor which prevented him from complying with the state's procedural rules in presenting this claim and he does not demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law.  Nor is there any

argument or indication that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray*, 477 U.S. at 496. Federal review of the claim is foreclosed.

### D.   Review of Claims Adjudicated on the Merits

As set forth *supra*, under the AEDPA, federal courts reviewing a state prisoner's application for a writ of habeas corpus may not grant relief "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "In considering a § 2254 petition, we review the 'last reasoned decision' of the state courts on the petitioner's claims." *Simmons v. Beard*, 590 F.3d 223, 231–32 (3d Cir. 2009) (citing *Bond v. Beard*, 539 F.3d 256, 289–90 (3d Cir. 2008) ). Thus, "[w]e review the appellate court decision, not the trial court decision, as long as the appellate court 'issued a judgment, with explanation, binding on the parties before it.' " *Burnside v. Wenerowicz*, 525 F. App'x 135, 138 (3d Cir. 2013). However, when the highest state court that considered the claim does not issue a reasoned opinion,

we "look through" that decision to the last reasoned opinion of the state courts, and

we apply a rebuttable presumption that the higher court adopted the same

reasoning as that set forth by the lower court. *Wilson v. Sellers*, — U.S. —, 138 S.

Ct. 1188, 1192 (2018).

"[B]ecause the purpose of AEDPA is to ensure that federal habeas relief

functions as a guard against extreme malfunctions in the state criminal justice

systems, and not as a means of error correction," *Greene v. Fisher*, 565 U.S. 34, 38

(2011) (internal quotations and citations omitted), "[t]his is a difficult to meet and

highly deferential standard . . . which demands that state-court decisions be given

the benefit of the doubt." *Cullen*, 563 U.S. at 181(internal quotation marks and

citation omitted).  The burden is on Corliss to prove entitlement to the writ.  *Id.*

A decision is "contrary to" federal law if "the state court applies a rule that

contradicts the governing law set forth in [Supreme Court] cases" or "if the state

court confronts a set of facts that are materially indistinguishable from a decision

of [the Supreme] Court and nevertheless arrives at a result different from [Supreme

Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

"[A] state court decision reflects an 'unreasonable application of such law'

only 'where there is no possibility fairminded jurists could disagree that the state

court's decision conflicts with [the Supreme] Court's precedents,' a standard the

Supreme Court has advised is 'difficult to meet' because it was 'meant to be.'
[*Harrison v*.] *Richter*, 562 U.S. 86, [ ] 102, 131 S.Ct. 770. As the Supreme Court
has cautioned, an 'unreasonable application of federal law is different from an
incorrect application of federal law,' *Richter*, 562 U.S. at 101, 131 S.Ct. 770
(quoting *Williams*, 529 U.S. at 410, 120 S.Ct. 1495), and whether we 'conclude[ ]
in [our] independent judgment that the relevant state-court decision applied clearly
established federal law erroneously or incorrectly' is irrelevant, as AEDPA sets a
higher bar. *Williams*, 529 U.S. at 411, 120 S.Ct. 1495." *Mathias v. Superintendent
Frackville SCI*, 876 F.3d 462, 476 (3d Cir. 2017). A decision is based on an
"unreasonable determination of the facts" if the state court's factual findings are
objectively unreasonable in light of the evidence presented to the state court.
*Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Finally, Section 2254(e) provides that "[i]n a proceeding instituted by an
application for a writ of habeas corpus by a person in custody pursuant to the
judgment of a State court, a determination of a factual issue shall be presumed to
be correct. The applicant shall have the burden of rebutting the presumption of
correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

1.    Grounds 1 and 2

In his first and second grounds, Corliss argues that the prosecutions in 1949

25

CR 2013 and 2173 CR 2013, were barred by the statute of limitations.  In criminal case 1749 CR 2013, he was charged with indecent assault, indecent exposure, corruption of a minor, endangering the welfare of minors, each of which possess a two-year statute of limitations.  (Doc. 2, p. 24).  He argues that "each crime contains an element requiring the prosecution to assert evidence that 'negatives a defense under the statute of limitations.' (18 Pa.C.S.A. § 103 Definitions: Elements of an offense)."  (*Id.* at 25).  It is his position that the limitations for each of these four crimes expired in June of 2012, and that bringing them in July of 2013, violates due process of law and the *ex post facto* clause.  (*Id.*); (Docs. 30, 31).

He also asserts that the 2173 CR 2013 prosecution, in which he was charged with two counts of indecent contact "occurring at some nebulous time, prior to July of 1997," were barred.  (Doc. 2, p. 26).  He avers that the charge of "A[ggravated] I[ndecent] A[ssault] in 1997 had a limitations period of '5 years' which expired in 2002 [Act 17 of 1996, amending 42 Pa.C.S.A. § 5552(a)]; thereby charging in 2013 was patently without authorization to do so."  (*Id.*); (Docs. 30, 31).

Procedurally, Corliss unsuccessfully challenged the statute of limitations in numerous pre-trial and post-trial motions.  (Docs. 2-2, pp. 8-10, 20-26, 57-59; Doc. 21-3, pp. 4-8; Doc. 21-13, pp. 5, 6, 8, 9; Doc. 21-17, pp. 17, 19, 21).  In the

Omnibus Opinion Order entered on January 7, 2014, the trial court considered the

Counts lodged in 2173 CR 2013 pertaining to victim R.V.  The court noted that the

incidents were alleged to have occurred between 1995 and 1998, and that the

Defendant conceded that the victim was born in January 1986 and turned 18 in

2004.  (Doc. 21-3, p. 4).   The court then found that the charges were subject to the

exception set forth in 42 PA.C.S.A. § 5552(c)(3), which states that "(3) Any sexual

offense committed against a minor who is less than 18 years of age at any time up

to the later period of limitations provided by law after the minor has reached 18

years of age or the date the minor reaches 50 years of age.  As used in this

paragraph, the term 'sexual offense' means a crime under the following provisions

of Title 18 (relating to crimes and offenses): … Section 3125 relating to aggravated

indecent assault. Section 3126 (relating to indecent assault) … Section 4304

(relating to endangering the welfare of children). Section 6301 (relating to

corruption of minors)."  (Doc. 21-3, p. 6).  Further, with respect to Counts 1 and 2,

Aggravated Indecent Assault, the trial court found that the time limitation "was

extended for twelve (12) years after R.V. turned 18 under Sections 5552 (b.1) and

(c).  This date would be January 2016.  The Commonwealth commenced its

prosecution within this time frame so the time limitations were tolled."  (*Id.* at 6,

7).  Consequently, the court denied the motion for dismissal of Counts 1 and 2 on

statute of limitations grounds.

Post-trial, the trial court revisited the timeliness of the prosecutions in both cases in an October 7, 2016 Opinion and Order addressing a *pro se* motion for extraordinary relief, and ruled as follows:

> The Defendant next contends the statute of limitations bars the charges and the conviction in case #2173 CR 2013. This issue has been ruled upon many times pre-trial. The Defendant now asserts that some instruction should have been given to the jury to determine the statute of limitations and/or that the evidence was insufficient to show the Commonwealth proved an exception to the statute of limitations. We disagree. For the reasons stated in prior pre-trial orders of this Court, the charges were not time barred and no further instructions were required or necessary to be given to the jury. The Defendant is not entitled to an acquittal based upon the statute of limitations defense. The conduct complained of was the type that fell within the applicable statute of limitations period in effect after the complainant turned 18 as a matter of law. As previously ruled upon, the Commonwealth only had to file the instant charges within twelve (12) years after the complainant turned 18. We previously found that they had done so.
>
> ***
>
> [In case #1949 CR 2013 (C.C.)], [t]he Defendant next alleges that the statute of limitations for indecent assault, indecent exposure, endangering the welfare of children and corruption of minors applies. The Defendant asserts, as in case #2173 CR 2013, that the evidence failed to negate a defense of the statute of limitations for these offenses. This Court previously ruled on the statute of limitations defense several times in pre-trial orders. The Defendant mistakenly believes that these charges either had to be brought within two (2) years of the offense dates, or within two (2) years after the complainant turns 18. As previously cited in prior orders, the statute of limitations in these matters does not run until (2) years after C.C. turns 18; such that the Defendant can be charged and tried anytime between the offense date

and up until two (2) years after C.C. turns 18.  C.C. has not yet turned 18.  The Commonwealth had no duty to prove anything to the jury in this regard.  The Defendant's motion will be denied.

(Doc. 21-13, pp. 5, 6, 8, 9).

Corliss' statute of limitations argument was addressed by the trial court yet again and rejected for the same reasons as in previous orders of court in an Opinion and Order disposing of post-sentence motions.  (Doc. 21-17, pp. 17, 19, 21).  In issuing its Statement pursuant to PA.R.A.P. 1925(a), the court noted that the December 15, 2016 Opinion and Order and prior Opinions and Orders entered addressed, *inter alia*, the statute of limitations arguments.

He continued pursuit of the statute of limitations during the appeal of his October 7, 2016 judgment of sentence posing the question of "[w]hether a judgment of acquittal or an arrest of judgment must issue as to six crimes convicted of when the jury did not render a decision as to the challenged element of negating the statute of limitations."  (Doc 21-22, p. 3).  He argued on appeal, as he does here, that "[u]nder Pennsylvania law, the 'Commonwealth is required to prove as an element of every criminal offense that an applicable statute of limitations did not bar prosecution.' Com. v. Bethlehem, 570 A.2d 563, 1989; Accord. 18 Pa. C.S.A. § 103. [Footnote 3:  18 § 103 Definitions, 'Elements of an offense.' Such conduct or such attendant circumstances or such result of conduct

as:… (4) negatives a defense under the statute of limitations.']"   (*Id.* at 17).

The Superior Court considered the issue on appeal as follows:

A statute of limitations defense is properly raised prior to trial in an omnibus motion to dismiss the charges. *Commonwealth v. Corban Corp.*, 909 A.2d 406, 411 (Pa.Super. 2006), affirmed, 957 A.2d 274 (Pa. 2008), citing *Commonwealth v. Rossetti*, 863 A.2d 1185, 1190 (Pa.Super. 2004), appeal denied, 878 A.2d 864 (Pa. 2005); *Commonwealth v. Groff*, 548 A.2d 1237, 1244 (Pa.Super. 1988). "The Commonwealth bears the burden to establish that a crime as charged was committed within the applicable statute of limitations period." *Corban Corp.*, 909 A.2d at 411, citing *Groff*, 548 A.2d at 1248. A defendant must raise a statute of limitations defense pretrial; otherwise, the defense is waived. *Id.* at 1245 n.8, citing *Commonwealth v. Darush*, 459 A.2d 727, 730 n.4 (Pa. 1983).

> If the statute of limitations defense poses a question of law, the judge may decide the issue pretrial or at an appropriate time during trial. If the statute of limitations poses a question of fact, the judge should not decide the question but should present the question for jury consideration.

*Groff*, 548 A.2d at 1248, n.8. "Where the date of discovery of criminal acts is unrebutted, the issue of whether the statute of limitations for prosecution has run is a question of law for the trial judge." *Corban Corp.*, 909 A.2d at 410, citing *Commonwealth v. Hoffman*, 398 A.2d 658, 661 (Pa.Super. 1979).

Upon a review of the record, we find that appellant properly raised a statute of limitations defense when he filed *a pro se* amended omnibus pretrial motion on January 21, 2014, seeking dismissal of the following charges due to the expiration of the statute of limitations: indecent assault, indecent exposure, endangering the welfare of children, and corruption of minors. Accordingly, appellant has sufficiently preserved this issue for appellate review, and we shall review this issue on its merits.

Appellant, citing 42 Pa.C.S.A. § 5552(a), avers that the Commonwealth failed to initiate criminal proceedings against appellant within the statutory two-year time period. Appellant's reliance, however, is misplaced. The Commonwealth charged appellant with four offenses subject to the exceptions to the two-year statute of limitations found in 42 Pa.C.S.A. § 5552(c)(3). Subsection 5552(c)(3) provides, in relevant part,

> (3) Any sexual offense committed against a minor who is less than 18 years of age any time up to the later of the period of limitation provided by law after the minor has reached 18 years of age or the date the minor reaches 50 years of age....

42 Pa.C.S.A. § 5552(c)(3).

Appellant further avers that the Commonwealth failed to "allege any statement in the Information as to any claimed tolling or an exception to the statute of limitations ...." (Appellant's brief at 13.) Our supreme court has held, however, that the Commonwealth is not required to include any notice of tolling or exceptions to the statute of limitations in the criminal information, so long as the defendant is not prejudiced. *Commonwealth v. Stockard*, 413 A.2d 1088, 1092 (Pa. 1980). Specifically, the court stated:

> The fact that the Commonwealth did not allege in the [complaint] that it would seek to toll the statute of limitations is of no consequence [if] there is no prejudice to [defendant.] The Commonwealth did inform [defendant] of the tolling of the statute of limitations when the Commonwealth filed its answer to [defendant's] motion to dismiss the complaint.... As long as a defendant, some reasonable time before trial, is [apprised] that the Commonwealth will seek to toll the statute of limitations, the due process requirements of notice are met.

*Id.*, quoted by *Commonwealth v. Morrow*, 682 A.2d 347, 349 (Pa.Super. 1996), appeal denied, 693 A.2d 587 (Pa. 1997). In *Morrow*, similarly to the defendant in *Stockard*, the Commonwealth responded to an omnibus pretrial motion seeking dismissal on the grounds of the

expiration of the statute of limitations with a written notice of intention to toll the statute. *Id.* This court found that the defendant was not prejudiced, as he was "adequately and timely informed of the Commonwealth's intentions," prior to trial." *Id.* In *Commonwealth v. Russell*, 938 A.2d 1082, 1088 (Pa.Super. 2007), appeal denied, 956 A.2d 434 (Pa. 2008), this court reaffirmed that the Commonwealth satisfies the notice requirement so long as it notifies the defendant of its intention to toll the statute of limitations at a reasonable time before trial.

Here, appellant filed an amended omnibus pretrial motion on January 21, 2014. The Commonwealth subsequently filed a written notice of tolling of the statute of limitations on February 24, 2014—over two years before the start of trial on May 31, 2016. We, therefore, find that the Commonwealth provided adequate written notice of its intent to toll the statute of limitations within a reasonable time before trial. Accordingly, appellant's first issue is without merit.

*Commonwealth v. Corliss*, 2017 WL 6196304, at *4–5.

Supreme Court precedent governing statutes of limitations recognizes that "[i]n the first stage—before arrest or indictment, when the suspect remains at liberty—statutes of limitations provide the primary protection against delay, with the Due Process Clause as a safeguard against fundamentally unfair prosecutorial conduct. *United States v. Lovasco*, 431 U.S. 783, 789, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *see id.*, at 795, n. 17, 97 S.Ct. 2044 (Due Process Clause may be violated, for instance, by prosecutorial delay that is "tactical" or "reckless" (internal quotation marks omitted))." *Betterman v. Montana*, — U.S. —, 136 S. Ct. 1609, 1613 (2016).  "The purpose of a statute of limitations is to limit exposure

to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past. Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity. For these reasons and others, we have stated before 'the principle that criminal limitations statutes are 'to be liberally interpreted in favor of repose,' *United States v. Scharton*, 285 U.S. 518, 522, 52 S.Ct. 416, 417, 76 L.Ed. 917 (1932).' *United States v. Habig*, 390 U.S. 222, 227, 88 S.Ct. 926, 929, 19 L.Ed.2d 1055 (1968)." *Toussie v. United States*, 397 U.S. 112, 114–15 (1970).  Significantly, the Supreme Court has determined that "[a] statute-of-limitations defense does not call the criminality of the defendant's conduct into question, but rather reflects a policy judgment by the legislature that the lapse of time may render criminal acts ill-suited for prosecution.  *See, e.g., Toussie v. United States*, 397 U.S. 112, 114–115, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970)."  *Smith v. United States*, 568 U.S. 106, 110–12 (2013).

Corliss asserts that the state court erred in failing to consider the statute of

limitations as an element of the offenses to be presented to the jury.  As noted *supra*, a statute of limitations defense does not call the criminality of the defendant's conduct into question, but rather reflects a policy judgment by the legislature that the lapse of time may render criminal acts ill-suited for prosecution. Consequently, we find that the state courts' conclusions concerning whether the offenses were within statute of limitations issue were properly decided by the trial court, and not presented to the jury for consideration, are not contrary to, or an unreasonable application of, governing Supreme Court precedent.

He also contends that state court violated *Alleyne v. United States*, 570 U.S. 99, 107–08 (2013) in failing to present the statute of limitations to the jury.  The *Alleyne* Court opined as follows:

> The touchstone for determining whether a fact must be found by a jury beyond a reasonable doubt is whether the fact constitutes an "element" or "ingredient" of the charged offense. *United States v. O'Brien*, 560 U.S. 218, ——, 130 S.Ct. 2169, 176 L.Ed.2d 979 (2010); *Apprendi*, *supra*, at 483, n. 10, 120 S.Ct. 2348; J. Archbold, Pleading and Evidence in Criminal Cases 52 (5th Am. ed. 1846) (hereinafter Archbold). In *Apprendi,* we held that a fact is by definition an element of the offense and must be submitted to the jury if it increases the punishment above what is otherwise legally prescribed. 530 U.S., at 483, n. 10, 120 S.Ct. 2348. While Harris declined to extend this principle to facts increasing mandatory minimum sentences, *Apprendi's* definition of "elements" necessarily includes not only facts that increase the ceiling, but also those that increase the floor. Both kinds of facts alter the prescribed range of sentences to which a defendant is exposed and do so in a manner that aggravates the punishment. 530 U.S., at 483, n. 10, 120 S.Ct. 2348; *Harris*, *supra*, at

> 579, 122 S.Ct. 2406 (THOMAS, J., dissenting). Facts that increase the
> mandatory minimum sentence are therefore elements and must be
> submitted to the jury and found beyond a reasonable doubt.

*Alleyne v. United States*, 570 U.S. 99, 107–08, 133 S. Ct. 2151, 2158, 186 L. Ed.

2d 314 (2013).

Corliss' argument lacks merit.  The statute of limitations is not a fact that

increases the punishment above what is otherwise legally prescribed.  As such, it

does not constitute an element that must be submitted to the jury and found beyond

a reasonable doubt.

2.    Grounds 3, 4, and 5

In Grounds 3, 4, and 5, Corliss challenges the sufficiency of the evidence

adduced in support of the IDSI convictions, primarily focusing on the sexual

intercourse component of the convictions.  He also contends that the trial court

"change[d] the evidence" to include penetration to permit instructing the jury on

sexual intercourse.[3]

The "clearly established Federal law" governing sufficiency of the evidence

claims is set forth in the United States Supreme Court's decision in *Jackson v.*

*Virginia*, 443 U.S. 307 (1979).  Under *Jackson*, evidence is sufficient to support a

---

[3] In the state court proceedings, Corliss challenged the sufficiency of the evidence relating to the IDSI and incest convictions.  Here, he limits his challenge to whether the evidence is sufficient to support the IDSI conviction.

conviction if, "after reviewing the evidence in the light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt." *Id.* at 319.  "*Jackson* leaves juries broad

discretion in deciding what inferences to draw from the evidence presented at trial,

requiring only that jurors 'draw reasonable inferences from basic facts to ultimate

facts.' " *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (quoting *Jackson*, 443 U.S.

at 319).

The sufficiency of the evidence supporting the IDSI convictions was raised

on direct appeal.  The Superior Court set forth the following standard of review:

> In reviewing the sufficiency of the evidence, we view all evidence
> admitted at trial in the light most favorable to the Commonwealth, as
> verdict winner, to see whether there is sufficient evidence to enable [the
> fact finder] to find every element of the crime beyond a reasonable
> doubt. This standard is equally applicable to cases where the evidence
> is circumstantial rather than direct so long as the combination of the
> evidence links the accused to the crime beyond a reasonable doubt.
> Although a conviction must be based on "more than mere suspicion or
> conjecture, the Commonwealth need not establish guilt to a
> mathematical certainty."
>
> Moreover, when reviewing the sufficiency of the evidence, the Court
> may not substitute its judgment for that of the fact finder; if the record
> contains support for the convictions, they may not be disturbed.
>
> *Commonwealth v. Stokes*, 78 A.3d 644, 649 (Pa.Super. 2013) (citations
> omitted), appeal denied, 89 A.3d 661 (Pa. 2014). The Commonwealth
> may satisfy its burden of proving a defendant's guilt beyond a
> reasonable doubt by using wholly circumstantial evidence.
> *Commonwealth v. Diggs*, 949 A.2d 873, 877 (Pa. 2008), cert. denied,

556 U.S. 1106 (2009).

> This court has also previously stated that the uncorroborated testimony of a victim of a sexually based offense is sufficient to uphold a conviction, so long as the testimony is believed by the trier-of-fact. *Commonwealth v. Trippett,* 932 A.2d 188, 194 (Pa.Super. 2007), citing *Commonwealth v. Charlton*, 902 A.2d 554, 562 (Pa.Super. 2006). A fact-finder is free to believe all, part, or none of the evidence, including uncorroborated testimony, presented. *Commonwealth v. Mosley*, 114 A.3d 1072, 1087 (Pa.Super. 2015) (citations omitted), appeal denied, 166 A.3d 1215 (Pa. 2017). Therefore, how much credibility and weight is given to the uncorroborated testimony is fully within the exclusive purview of the fact-finder.

*Commonwealth v. Corliss*, No. 108 EDA 2017, 2017 WL 6196304, at *5 (Pa. Super. Ct. Dec. 8, 2017).  Clearly, the Superior Court applied the Pennsylvania equivalent of the *Jackson* standard.  *See also Evans v. Court of Common Pleas, Delaware Cnty.*, 959 F.2d 1227, 1233 (3d Cir. 1992) (noting that the test for sufficiency of the evidence is the same under both Pennsylvania and federal law). Because the Superior Court applied the correct legal standard, its adjudication satisfies review under the "contrary to" clause of § 2254(d)(1).  *See, e.g., Williams*, 529 U.S. at 405-06.

We next consider whether the trial court's decision amounted to an "unreasonable application" of *Jackson*.

> *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury ... to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may

set aside the [trial court's] verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the [trial court]." *Cavazos v. Smith*, 565 U.S. 1 (2011). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.' " *Ibid.* (quoting *Renico v. Lett*, 559 U.S.766 (2010)).

- - -

[T]he only question under *Jackson* is whether [the state court's] finding was so insupportable as to fall below the threshold of bare rationality. The state court of last review did not think so, and that determination in turn is entitled to considerable deference under AEDPA, 28 U.S.C. § 2254(d).

*Coleman,* 566 U.S. at 651, 656.

Corliss' sufficiency of the evidence claims mirror those raised on appeal. (Docs. 21-22, 21-24).  He breaks the claims into three arguments.  Initially he argues that he "was charged with crimes that possess an element of 'sexual intercourse' though no evidence exists to support same."  (Doc. 2, p. 54).  He next contends that the state court erred in failing to dismiss the IDSI charges because "the Pennsylvania General assembly and Pennsylvania Supreme Court anticipates [sic] evidence of penile penetration of a vagina to support the element of 'sexual intercourse;' however…no testimony of record exists to infer, suggest or point directly to what can be construed as penile penetration of a vagina."  (*Id.* at 62). And he asserts that, in contravention of the definition of sexual intercourse, "over objection, as no claims of penile penetration of a vagina existed, the court *sua*

*sponte* directed the jury that 'some form of oral contact with the genitalia of a female victim is all that is required.'" (*Id.* at 69).  He focuses on various Pennsylvania General Assembly definitions contained in other statutes in support of his arguments that the convictions were unconstitutionally obtained based on a lack of evidentiary support.  (*Id.* at 56, 57, 60, 63, 64, 69, 71, 72, 79).

In considering the claims, the Superior Court opined as follows:

> This court has also previously stated that the uncorroborated testimony of a victim of a sexually based offense is sufficient to uphold a conviction, so long as the testimony is believed by the trier-of-fact. *Commonwealth v. Trippett,* 932 A.2d 188, 194 (Pa.Super. 2007), citing *Commonwealth v. Charlton*, 902 A.2d 554, 562 (Pa.Super. 2006). A fact-finder is free to believe all, part, or none of the evidence, including uncorroborated testimony, presented. *Commonwealth v. Mosley*, 114 A.3d 1072, 1087 (Pa.Super. 2015) (citations omitted), appeal denied, 166 A.3d 1215 (Pa. 2017). Therefore, how much credibility and weight is given to the uncorroborated testimony is fully within the exclusive purview of the fact-finder.

> In the instant case, after reviewing the evidence presented, cast in the light most favorable to the Commonwealth, as verdict winner, we find that the evidence is sufficient to warrant the jury's convictions for IDSI….

> IDSI is defined, in relevant part, as:

>> (b) Involuntary deviate sexual intercourse with a child.—A person commits involuntary deviate sexual intercourse with a child, a felony of the first degree, when the person engages in deviate sexual intercourse with a complainant who is less than 13 years of age.

> 18 Pa.C.S.A. § 3123(b). The General Assembly defined "deviate sexual

39

intercourse" as:

> [s]exual intercourse per os or per anus between human beings and
> any form of sexual intercourse with an animal. The term also
> includes penetration, however slight, of the genitals or anus of
> another person with a foreign object for any purpose other than
> good faith medical, hygienic or law enforcement procedures.

18 Pa.C.S.A. § 3101; *see also Commonwealth v. Kelley*, 801 A.2d 551,
555 (Pa. 2002), citing *Commonwealth v. Lee*, 638 A.2d 1006 (Pa.Super.
1994), appeal denied, 647 A.2d 898 (Pa. 1994) (interpreting sexual
intercourse and deviate sexual intercourse to include acts of oral and
anal sex).

During the trial, C.C. testified that she was born on February 16, 1999,
and was 17 years old at the time of trial. (Notes of testimony, 5/31/16
at 88.) At the time that appellant lived with C.C., C.C. was 10 years old.
(Id. at 89.) C.C. also testified that appellant touched her chest and
vagina, exposed his penis, tried to place his penis in her mouth, and put
his mouth directly on her vagina. (Id. at 94–95.) We find that this
testimony supports the jury's guilty verdict for IDSI. *See generally
Commonwealth v. Mawhinney*, 915 A.2d 107, 111 (Pa.Super. 2006),
appeal denied, 932 A.2d 1287 (Pa. 2007) (finding that the victim's
testimony describing elements of IDSI is sufficient evidence to warrant
conviction).

*Commonwealth v. Corliss*, 2017 WL 6196304, at *5, 6 (Pa. Super. Ct. Dec. 8,

2017).

In asserting that there was insufficient evidence to support the IDSI

convictions, Corliss fixates on Pennsylvania's definition of "sexual intercourse"

and other definitions contained in the sexual abuse of children statute.  He argues

that "[a]bent the requisite element of penile penetration of a vagina, no court

possessed jurisdiction to try these fatally pled allegations" and there was no

support for the trial judge to charge on penetration and further define penetration

for the jury.  (Doc. 2, p. 58, 65. 70, ).  These arguments ignore the definition of

deviate sexual intercourse included in the state court opinions, which plainly

includes "sexual intercourse per os" and "penetration, however slight, of the

genitals… of another person with a foreign object for any purpose other than good

faith medical, hygienic or law enforcement procedures."  *Commonwealth v.*

*Corliss*, 2017 WL 6196304, at *5, 6.  *See also*, Doc. 21-13, pp. 9-11; Doc. 21-17,

pp. 21-25.

Importantly, "28 U.S.C. § 2254(d) gives federal habeas courts no license to

redetermine credibility of witnesses whose demeanor has been observed by the

state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434

(1983).  Indeed, under the *Jackson* standard, "the assessment of the credibility of

witnesses is generally beyond the scope of review." *Schlup v. Delo*, 513 U.S. 298,

330 (1995). The proper question is not whether the witnesses were credible, but

"whether there is sufficient evidence which, if credited, could support the

conviction." *Id.*  Further, *Coleman* cautioned courts that *Jackson* does not permit

"imping[ing] on the jury's role as factfinder" through "fine-grained factual

parsing."  *Coleman*, 566 U.S. at 655.  Rather, "*Jackson* leaves juries broad

discretion in deciding what inferences to draw from the evidence presented at trial,

requiring only that jurors 'draw reasonable inferences from basic facts to ultimate

facts.' [*Jackson*, 443 U.S.] at 319." *Id.* We have no grounds on which to

conclude that the court's reliance on C.C's testimony in upholding the IDSI

convictions "was so insupportable as to fall below the threshold of bare

rationality." *Coleman*, 566 U.S. at 656.

Taking into consideration the testimony of C.C., and viewing the evidence in

the light most favorable to the prosecution, the Court finds that the state court's

conclusion that there was sufficient evidence at trial to establish the necessary

elements for IDSI, is not objectively unreasonable. There simply is no possibility

that fair-minded jurist could find that this determination conflicts with applicable

Supreme Court precedent. Nor, based on review of the state court evidence, is it

an unreasonable determination of the facts in light of the evidence presented.

### 3.   Grounds  6 and 7

The arguments in Grounds 6 and 7 focus on the conduct of the prosecutor,

Mr. Rakaczewski.  The relevant Supreme Court precedent states:

> [T]he touchstone of due process analysis in cases of alleged
> prosecutorial misconduct is the fairness of the trial, not the culpability
> of the prosecutor.  In *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194,
> 10 L.Ed.2d 215 (1963), for example, the prosecutor failed to disclose
> an admission by a participant in the murder which corroborated the
> defendant's version of the crime. The Court held that a prosecutor's

suppression of requested evidence "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.*, at 87, 83 S.Ct., at 1196. Applying this standard, the Court found the undisclosed admission to be relevant to punishment and thus ordered that the defendant be resentenced. Since the admission was not material to guilt, however, the Court concluded that the trial itself complied with the requirements of due process despite the prosecutor's wrongful suppression.

This principle was reaffirmed in *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). There, we held that a prosecutor must disclose unrequested evidence which would create a reasonable doubt of guilt that did not otherwise exist. Consistent with *Brady*, we focused not upon the prosecutor's failure to disclose, but upon the effect of nondisclosure on the trial:

> "Nor do we believe the constitutional obligation [to disclose unrequested information] is measured by the moral culpability, or willfulness, of the prosecutor. If evidence highly probative of innocence is in his file, he should be presumed to recognize its significance even if he has actually overlooked it. Conversely, if evidence actually has no probative significance at all, no purpose would be served by requiring a new trial simply because an inept prosecutor incorrectly believed he was suppressing a fact that would be vital to the defense. If the suppression of the evidence results in constitutional error, it is because of the character of the evidence, not the character of the prosecutor." 427 U.S., at 110, 96 S.Ct., at 2400 (footnote and citation omitted).

*Smith v. Phillips*, 455 U.S. 209, 219–20 (1982). Prosecutorial misconduct alone does not require a new trial. *Id.* at 220.

### a.    Ground 6

In his Sixth ground, Corliss seeks relief on the ground that the prosecutor suborned perjury from D.B.. (Doc. 2, p. 89). He raised the same issue in his state

court appeal contending that "the Commonwealth suborned perjury by presenting testimony from D.B. pertaining to encounters with appellant in which appellant was acquitted of charges brought by the Commonwealth." *Commonwealth v. Corliss*, 2017 WL 6196304, at *8; (Doc. 21-22, p. 3). In state court and here, he relies "on the fact that the 1998 jury, while convicting him of two counts of statutory sexual assault and one count each of aggravated indecent assault and corruption of minors, also acquitted him of one count of statutory sexual assault, two counts of aggravated indecent assault, and three counts each of indecent assault and corruption of minors. [Corliss] accordingly, claims that 'an alibi witness rendered [D.B.'s] claims patently false as that jury rejected sixty-six percent (66%) of her claims and properly acquitted [appellant] thereof ...' (Appellant's brief at 30.)" *Id.* at *8; Doc. 2, pp. 91, 92.

In considering the issue, the Superior Court stated the following:

> We disagree with appellant's reliance on the 1998 jury's verdict. This court's decision in *Commonwealth v. Ardinger*, 839 A.2d 1143 (Pa.Super. 2003), is particularly instructive. In *Ardinger*, the Commonwealth sought to introduce testimony from an alleged victim and the victim's mother in an attempt to establish evidence of a common plan pursuant to Pa.R.E. 404(b)(2). *Id.* at 1144. Both the victim and his mother were to provide testimony of an incident that occurred in Maryland, for which the defendant was charged, but not convicted, at the time of the Pennsylvania proceedings. *Id.* This court reiterated that " 'Pa. R. Evid. 404(b) is not limited to evidence of crimes that have been proven beyond a reasonable doubt in court. It encompasses both prior crimes and prior wrongs and acts, the latter of

which, by their nature, often lack "definitive proof." ' " *Id.*, quoting *Commonwealth v. Lockcuff*, 813 A.2d 857, 861 (Pa.Super. 2002), appeal denied, 825 A.2d 638 (Pa. 2003).

The *Ardinger* court further explained that it was up to the jury sitting for Mr. Ardinger's trial to determine the credibility of the victim and his mother as they testified regarding the charges pending in Maryland. *Ardinger*, 839 A.2d at 1146. Additionally, this court noted that both witnesses would be subject to cross-examination that could "include questions which will enable the jury to know that the charges against [Mr. Ardinger] in Maryland have not yet resulted in a conviction." *Id.*

In the instant appeal, it was within the jury's sole purview to determine the credibility of D.B.'s testimony. Likewise, appellant's trial counsel had the opportunity on cross-examination to include questions that would enable the jury to know that appellant was not convicted of all charges against him at the 1998 trial.

Additionally, we disagree with appellant's claim that his acquittal of several charges in 1998 is tantamount to the jury finding D.B.'s testimony to not be credible. This court has previously cautioned that an acquittal cannot be interpreted as a specific finding in relation to some of the evidence presented; and acquittal may represent the jury's exercise of its historic power of lenity; and a contrary rule would abrogate the criminal procedural rules that empower a judge to determine all questions of law and fact as to summary offenses. *Commonwealth v. Barger*, 956 A.2d 458, 461 (Pa.Super. 2008) (*en banc*), appeal denied, 980 A.2d 109 (Pa. 2009), citing *Commonwealth v. Wharton*, 594 A.2d 696, 698–699 (Pa.Super. 1991), *Commonwealth v. Yachymiak*, 505 A.2d 1024, 1026–1027 (Pa.Super. 1986).

Therefore, we find that determining the credibility of D.B.'s bad acts testimony was within the sole purview of the jury sitting in appellant's 2016 trial, and accordingly, appellant's third issue is without merit.

*Commonwealth v. Corliss*, 2017 WL 6196304, at *8–9.

As stated *supra*, the credibility of witnesses whose demeanor has been

observed by the state trial court, and not by this court, is beyond our scope of review. *Marshall*, 459 U.S. at 434; *Schlup*, 513 U.S. at 330.  Further, caselaw prohibits this court from intruding on the jury's role as factfinder as they must be afforded broad discretion in deciding what inferences to draw from the evidence presented at trial and simply requires that jurors draw reasonable inferences from basic facts to ultimate facts.  *Coleman*, 566 U.S. at 655.

It is clear that the Superior Court properly focused on the fairness of the trial and rejected the claim based upon a finding that it was the sole role of the jury to determine the credibility of D.B.  This finding is in accord with, and a reasonable application of, governing Supreme Court precedent.  It is also an objectively reasonable determination of the facts in light of the evidence presented to the state court.

### b.      Ground 7

Corliss next argues that "Rakaczewski refused to put into evidence emails and other known evidence that challenged C.C's credibility and proves that no untoward conduct occurred."  (Doc. 2, p. 112).  He argued in state court, as he does here, that the prosecutor "deliberately withheld from Petitioner's jury facts he knew of that challenge C.C's claims, as being recent fabrications premised on a motive to lie for her mother, Petitioner's disgruntled ex-wife" and includes a litany

of facts which he contends were "known to Rakaczewski but were deliberately omitted." (*Id.* at 112-116).  He asserts that Rakaczewski's omissions amounted to a corruption of the truth-seeking function of the trial process in violation of *Brady* noting that "[i]ndeed, of all three <u>Brady</u> categories, the Supreme Court made the test for the first the strictest in an effort to protect defendants against the most egregious <u>Brady</u> error – a prosecutor's knowing use of perjured testimony." (*Id.* at 117).  He contends that the prosecutor failed to provide the defense with any impeachment evidence prior to trial.  (*Id.* at 118).

On direct appeal, the Superior Court recognized that, although Corliss "alleges prosecutorial misconduct in that the Commonwealth deliberately omitted exculpatory evidence and 'known credibility challenges' as to C.C.'s testimony[,]" "[i]n essence, [he] is alleging that the Commonwealth committed a *Brady* violation. *See Brady v. Maryland*, 373 U.S. 83 (1963)." *Commonwealth v. Corliss*, 2017 WL 6196304, at *9.

Under *Brady,* the State violates a defendant's right to due process if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment.  *Brady*, 373 U.S. at 87.  " '[E]vidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different.' *Cone v.*

*Bell*, 556 U.S. 449, 469–470, 129 S.Ct. 1769, 173 L.Ed.2d 701 (2009).  A

reasonable probability does not mean that the defendant 'would more likely than

not have received a different verdict with the evidence,' only that the likelihood of

a different result is great enough to 'undermine[ ] confidence in the outcome of the

trial.'  *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490

(1995) (internal quotation marks omitted)."  *Smith v. Cain*, 565 U.S. 73, 75–76

(2012).  "Impeachment evidence ..., as well as exculpatory evidence, falls within

the *Brady* rule." *United States v. Bagley*, 473 U.S. 667, 676 (1985).  A three-part

test is employed in determining whether a *Brady* violation has occurred: (1) the

evidence at issue must be favorable to the defendant, either because it is

exculpatory or impeaching in nature; (2) the evidence must have been suppressed

by the state either willfully or inadvertently; and (3) prejudice must result from this

suppression. *Dennis v. Sec'y Dept. of Corr.*, 834 F.3d 263, 284-85 (3d Cir. 2016)

(*en banc*); *Banks v. Dretke*, 540 U.S. 668, 691 (2004)(citations omitted).  *Brady*

does not compel the government " 'to furnish a defendant with information which

he already has or, with any reasonable diligence, he can obtain himself.' "

*Starusko*, 729 F.2d at 262  (quoting *United States v. Campagnuolo*, 592 F.2d 852,

861 (5th Cir.1979)); *see also United States v. Dansker*, 565 F.2d 1262, 1265 (3d

Cir. 1977)." *United States v. Pelullo*, 399 F.3d 197, 213 (3d Cir. 2005), as

amended (Mar. 8, 2005).

The Superior Court set forth the following standards of review:

[Our supreme court] summarized the law in *Brady* in *Commonwealth v. Strong*, 761 A.2d 1167 (Pa. 2000):

> In *Brady*, the United States Supreme Court declared that due process is offended when the prosecution withholds evidence favorable to the accused.... The *Brady* court established the obligation of the prosecution to respond affirmatively to a request for production of exculpatory evidence with all evidence material to the guilt or punishment of the accused. Where evidence material to the guilt or punishment of the accused is withheld, irrespective of the good or bad faith of the prosecutor, a violation of due process has occurred.

*Id.* at 1171 (citations and footnote omitted).

In *United States v. Bagley*, 473 U.S. 667, 677 (1985), the Supreme Court concluded that "impeachment evidence ... as well as exculpatory evidence, falls within the *Brady* rule," and held that, regardless of request, favorable evidence is material, and constitutional error results from its suppression by the government "if there is reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 682. *See Strong*, *supra* at 1771 ("As *Brady* and its progeny dictate, when the failure of the prosecution to produce material evidence raises a reasonable probability that the result of the trial would have been different if the evidence had been produced, due process has been violated and a new trial is warranted." (citing *Bagley*)); *see also Commonwealth v. Moose*, 602 A.2d 1265, 1272 (Pa. 1992) ("When the reliability of a witness may be determinative of guilt or innocence, non-disclosure of evidence affecting that witness's credibility runs afoul of *Brady's* disclosure requirement.").

In determining whether a reasonable probability of a different outcome has been demonstrated, "[t]he question is not whether the defendant

would more likely than not have received a different verdict with the
evidence, but whether in its absence he received a fair trial, understood
as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*,
514 U.S. 419, 434 (1995). A "reasonable probability" of a different
result is shown when the government's suppression of evidence
"undermines confidence in the outcome of the trial." *Bagley*, *supra* at
678. The United States Supreme Court has made clear that *Bagley's*
materiality standard is not a sufficiency of the evidence test. *Kyles*,
*supra* at 434. A *Brady* violation is established "by showing that the
favorable evidence could reasonably be taken to put the whole case in
such a different light as to undermine confidence in the verdict." *Kyles*,
supra at 435.   Importantly, "[t]he mere possibility that an item of
undisclosed information might have helped the defense, or might have
affected the outcome of the trial, does not establish materiality in the
constitutional sense. *Commonwealth v. McGill*, 832 A.2d 1014, 1019
(Pa. 2003). "[I]n order to be entitled to a new trial for failure to disclose
evidence affecting a witness'[s] credibility, the defendant must
demonstrate the reliability of the witness may well be determinative of
his guilt or innocence." *Commonwealth v. Johnson*, 727 A.2d 1089,
1094 (Pa. 1999).  In assessing the significance of the evidence withheld,
a reviewing court must bear in mind that not every item of the
prosecution's case would necessarily have been directly undercut had
the *Brady* evidence been disclosed.  *Kyles*, *supra* at 451.

*Commonwealth v. Weiss*, 986 A.2d 808, 814–815 (Pa. 2009) (citations
reformatted).

*Brady*, however, does not relieve a defendant of his duty to perform due
diligence and conduct reasonable investigation in his own defense.
Indeed, our supreme court has stated that, "[i]t is well established that
'no *Brady* violation occurs where the parties had equal access to the
information or if the defendant knew or could have uncovered such
evidence with reasonable diligence.'" *Commonwealth v. Spotz*, 896
A.2d 1191, 1248 (Pa. 2006), citing *Commonwealth v. Morris*, 822 A.2d
684, 696 (Pa. 2003).

*Commonwealth v. Corliss*, 2017 WL 6196304, at *9–10.  These standards of

review wholly comport with governing Supreme Court precedent.

The Superior court then analyzed the claim as follows:

Appellant provides the following litany of evidence that he avers was improperly withheld by the Commonwealth:

a. [Appellant] resided with C.C. from August 2008 until June 10, 2010. Yet, from August 2008 until July of 2013 no claim of indecent assault or inappropriate sexual conduct is made to any person whatsoever.

b. After separation from C.C.'s mother, [C.T.], in June of 2010, a number of legal filings were made in custody and for a protection from abuse order that was abandoned.

....

c. When pressed at the preliminary hearing C.C. admitted:  "Well, he did ignore me. Like, mostly, he ignored me in the beginning, but toward the end he just ignored everyone." [N.T. 7/30/13 at 19.]

d. C.C.'s mother [C.T.] made numerous fraudulent claims in Protection from Abuse petitions, two of three filings were withdrawn.

e. C.C.'s mother [C.T.] had a pattern of non-compliance with mandatory notice to the custody court regarding her living arrangements, location and schooling of C.C. and then kidnapped C.C. to Hawaii.

f. Ultimately, [C.T.]'s fraud in support was revealed, and no Judge, Higgins vacated a support order, in [appellant's] favor, when asked why she refused to appear at support master hearings, she lied, claiming C.C. was sick those days.

g. Only when [appellant] moved to verify [C.T.]'s fraud to Judge Higgins did the lies get advanced of inappropriate conduct by [appellant], in July of 2013.

h. Judge Higgins' support order aptly reflects [C.T.]'s lie of C.C. being home sick, upon subpoena, evidence from C.C.'s school attendance

verifies that [C.T.] lied.

i. While awaiting trial, [C.T.] had kidnapped C.C. and fled to Hawaii, when [appellant] petitioned the custody court over this, [ADA] Rakaczewski sought free legal representation for her, rather than properly prosecute her or ensure the safety of the child.

j. In the affidavit of probable cause C.C.'s story is that [appellant's] penis does not enter her mouth, a claim she repeats on interview at the child advocacy center and at the preliminary hearing; however, at trial she changes her story and [ADA] Rakaczewski did nothing to inform the jury of C.C.'s prior claims.

Appellant's brief at 48–50 (citations omitted).

Appellant fails to enumerate any evidence that the Commonwealth improperly suppressed to which he did not have equal access and/or could have obtained by exercising reasonable diligence. Indeed, in several of the items listed above, appellant avers that the Commonwealth improperly suppressed information that was obtainable from the transcript of appellant's preliminary hearing. Upon an exercise of reasonable diligence, appellant's trial counsel could have easily confronted C.C. with any inconsistencies found in the preliminary hearing transcript.

Appellant also avers that C.T. and C.C. sent him letters and e-mails, which were improperly suppressed by the Commonwealth. Appellant, as the recipient of the letters and e-mails in question, had equal access to these documents, and his trial counsel could have used these documents on cross-examination.

Finally, appellant avers that the Commonwealth improperly withheld filings from appellant's litigation with C.T. pertaining to custody of C.C. As a party to that litigation, appellant would have been served with any and all filings from C.T., and accordingly would have had access to those documents for impeachment purposes during trial.

*Commonwealth v. Corliss*, 2017 WL 6196304, at *10–11.  It is evident that the

state court reasonably applied the clearly established Supreme Court precedent

governing *Brady* claims.

Based on the above, we conclude that the state court's decision was neither

contrary to, nor an unreasonable application of, clearly established federal law as

determined by the Supreme Court and that no federal relief is warranted.

## V.    <u>CERTIFICATE OF APPEALABILTY</u>

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a

certificate of appealability ("COA"), an appeal may not be taken from a final order

in a proceeding  under 28 U.S.C. § 2254.  A COA may issue only if the applicant

has made a substantial showing of the denial of a constitutional right.  28 U.S.C. §

2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of

reason could disagree with the district court's resolution of his constitutional

claims or that jurists could conclude the issues presented are adequate to deserve

encouragement to proceed further."  *Miller-El*, 537 U.S. 322.  Corliss fails to

demonstrate that a COA should issue.

The denial of a certificate of appealability does not prevent him from

appealing the order denying his petition so long as he seeks, and obtains, a

certificate of appealability from the Third Circuit Court of Appeals.  *See* FED. R.

APP. P. 22(b)(1).

## VI.    <u>CONCLUSION</u>

For the reasons set forth above, the petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254 will be denied.

A separate Order shall issue.